[Cite as *State v. Hipp*, **2013-Ohio-1684**.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 12CA013 |
| PAMELA HIPP | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Holmes County Municipal Court, Case No. 1200390 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | April 25, 2013 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| CHRISTINE C. WILLIAMS<br>Assistant Prosecuting Attorney<br>Holmes County, Ohio<br>164 East Jackson Street<br>Millersburg, Ohio 44654 | ANDREW G. HYDE<br>144 North Water Street<br>Loudonville, Ohio 44842 |

*Hoffman, P.J.*

{¶1}   Defendant-appellant Pamela Hipp appeals the July 31, 2012 Judgment Entry entered by the Holmes County Municipal Court denying her motion to suppress. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On March 9, 2012, Jack Butler, an employee of Speedway gas station in Millersburg, Ohio observed Appellant pull into the station nearly hitting a cement barrier. Appellant had parked at an unusual angle, and entered the gas station.  Butler then observed a strong odor of alcohol on Appellant's person.  He also observed Appellant stumbling when walking.

{¶3}   Upon Appellant's driving away from the premises, Butler called 911, giving the dispatcher the vehicles make, model and license plate number.  Butler indicated to the dispatcher only that he had observed an odor of alcohol on Appellant's person and he believed she was possibly intoxicated.

{¶4}   Upon receiving the report from dispatch, Deputy Brook Strother of the Holmes County Sheriff's Department observed the vehicle at an ATM machine at Commercial & Savings Bank.  Deputy Stother pulled in and approached Appellant, eventually initiating a stop.

{¶5}   Appellant was subsequently charged with operating a vehicle while intoxicated, in violation of R.C. 4511.19(A)(1)(a) and/or 4511.19(A)(1)(d).  Appellant filed a motion to suppress.  The trial court conducted a hearing on the motion.  Via Judgment Entry of July 31, 2012, the court denied the motion to suppress.

{¶6} Thereafter, Appellant entered into plea negotiations, ultimately entering a plea of no contest to the charge of violation of R.C. 4511.19(A)(1)(a).

{¶7} Appellant now appeals, assigning as error,

{¶8} "I. THE TRIAL COURT VIOLATED THE APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT BY REFUSING TO SUPPRESS EVIDENCE OBTAINED DURING A TRAFFIC STOP AFTER THE STATE FAILED TO PRESENT SPECIFIC, ARTICULABLE FACTS TO SUPPORT A REASONABLE SUSPICION OF CRIMINAL ACTIVITY."

{¶9} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: *State v. Klein,* 73 Ohio App.3d 486 (1991), *State v. Guysinger,* 86 Ohio App.3d 592 (1993). Second, an appellant may argue the trial court failed to apply the correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: *State v. Williams,* 86 Ohio App.3d 37 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law, an appellant may argue the trial court has incorrectly applied the law in deciding the ultimate or final issue raised in the motion to suppress. In reviewing this type of claim, an appellate court must give deference to the trial court and is governed by an abuse of discretion standard; i.e., it must determine whether the trial court's subjective determination of the ultimate issue in the case was unreasonable, arbitrary or

unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). It is with this framework in mind that we address the appellant's assignment of error.

{¶10} An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion "the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Alabama v. White* (1990), 496 U .S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301. But it requires something more than an "inchoate and unparticularized suspicion or 'hunch'." *Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow* (2000), 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570.

{¶11} "Where the information possessed by the police before the stop was solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight to be given the tip and the reliability of the tip." *Id.* at 299, 720 N.E.2d 507. Courts have generally identified three classes of informants: the anonymous informant, the known informant from the criminal world who has provided previous reliable tips, and the identified citizen informant. *Id.* at 300, 720 N.E.2d 507. An identified citizen informant may be highly reliable, and therefore a strong showing as to other indicia of reliability may be unnecessary. *Id.* Thus, courts have routinely credited the identified citizen informant with greater reliability. *Id.*

{¶12} In *State v. Burnap* this Court held,

**{¶13}** "The Tenth District Court of Appeals addressed the issue presented herein in *State v. Brant,* 2001–Ohio 3994:

**{¶14}** "'In this case, we must determine if Officer Fraley had a reasonable suspicion, based on articulable facts, to stop Brant's vehicle. Brant argues that Officer Fraley lacked sufficient information to justify a *Terry* stop. In particular, Brant argues that the officer had no personal knowledge which would lead him to believe that Brant was violating the law. Specifically, Brant contends that the facts provided by Mr. Bunting, even if known to Officer Fraley, were not sufficient enough to demonstrate a reasonable and articulable suspicion that Brant was engaged in unlawful behavior. We agree.

**{¶15}** "'This court has previously held that 'the simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop.' *State v. Ramsey* (Sept. 20, 1990), Franklin App No. 89AP–1298, unreported. 'A tip which standing alone would lack sufficient indicia of reliability may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work.' *Id; Adams v. Williams* (1972), 407 U.S. 143, 147 (when a tip lacks an indicia of reliability, further investigation is required before an investigatory stop of the suspect's vehicle will be authorized).'

**{¶16}** "' * * *

**{¶17}** "'Careful review of the record indicates that although the tip was reliable, it lacked sufficient information to provide reasonable suspicion that Brant was operating a motor vehicle while under the influence of alcohol. Mr. Bunting provided the Grove City Police Department dispatcher with the color of Brant's vehicle along with the license

plate number. Mr. Bunting also indicated that Brant was honking his horn for ten minutes, his shirt was on backwards and inside out and his speech was very slow. While it is not clear if the dispatcher relayed all of this information to Officer Fraley, Mr. Bunting nonetheless failed to indicate that he witnessed any traffic violations, unlawful behavior, or evidence of impaired driving. Additionally, even though Officer Fraley attempted to further investigate the tip, his independent police work proved to be fruitless. If Officer Fraley had observed erratic driving, then sufficient indicia of reliability would have been present to conduct the investigatory stop. Under the totality of the circumstances, Officer Fraley lacked a reasonable and articulable suspicion to stop Brant's vehicle. *Ramsey, supra.* Since Officer Fraley's personal observations failed to confirm Mr. Bunting's belief that Brant was intoxicated, we believe that Brant's Fourth Amendment rights were violated and, as such, Brant's sole assignment of error is well-taken and is sustained.'

**{¶18}** "***

**{¶19}** "Here, the gas station attendant reported to the police dispatch her opinion a driver was intoxicated. The attendant did not indicate bad driving or inappropriate activity or behavior in Appellant while operating his motor vehicle. The attendant did not indicate any personal interaction with the driver or establish any personal experience as foundation for forming an opinion the driver was intoxicated. While the citizen informant was reliable, we find the conclusory information provided was insufficient to justify an investigatory stop in the absence of any observations by Officer Ailes to demonstrate Appellant was committing an offense."

{¶20} In the case sub judice, Jack Butler testified at the June 20, 2012 suppression hearing,

{¶21} "Prosecutor: Ok  So you called the regular 911?

{¶22} "Butler: Yes.

{¶23} "Prosecutor: Ok  Who answered the phone?  Did a female…

{¶24} "Butler: It was a male voice.

{¶25} "Prosecutor: Ok  And what did you say?

{¶26} "Butler: I told them that I just had a customer come in.  I had smelled alcohol, alcohol on her breath.  Umm, I had her license plate number right here and read it off to him and told her, told him what direction the umm vehicle had pulled off in.

{¶27} "Prosecutor: Ok  Did you give a description of the vehicle besides the license plate number?

{¶28} "Butler: Yeah.  I gave like a full, as much as a description, I can't remember it right now.

{¶29} "Prosecutor: Right, that's Ok.

{¶30} "Butler: But like full description, make, model, color.

{¶31} "Prosecutor: Alright.  And were you able to see whether it was a male or a female at the time?

{¶32} "Butler: Yes.

{¶33} "Prosecutor: Ok  And do you, can you remember if you gave a description of the hair color and the size of the person?

{¶34} "Butler: Umm, I didn't give a description of the person, no.

{¶35} "Prosecutor: Ok  You just said it was a female?

**{¶36}** "Butler: Yes.

**{¶37}** "Prosecutor: Ok  Alright.  And did they ask you any further questions?

**{¶38}** "Butler: Ummm, at the time, or right now, that I can remember, no, they just thanked me and that was it."

**{¶39}** Tr. at 7-8

**{¶40}** Deputy Stother testified at the hearing,

**{¶41}** "Prosecutor: Ok  And sometime around 2:16 or between 2 and 2:30 in the middle of, would have been the next day in the early morning hours were you dispatched to a possible drunken driver?

**{¶42}** "Officer: Yes

**{¶43}** "Prosecutor: Ok  Can you explain to the court when the nature of the phone call or the dispatch phone call was about?

**{¶44}** "Officer: Yes  The information passed on to me was that a possible drunk driver had just left The Speedway on South Washington Street and headed north bound towards Millersburg.

**{¶45}** "Prosecutor: And when they gave you that information was it an actual dispatch, was the male dispatch officer that you heard on the tape?

**{¶46}** "Officer: Yes

**{¶47}** "Prosecutor: And when he gave you that information he relayed the make and model of the car?

**{¶48}** "Officer: Yes

**{¶49}** "Prosecutor: Said the driver, ahh the license number?

**{¶50}** "Officer: Yes

**{¶51}** "Prosecutor: And did he indicate whether it was a male or female?

**{¶52}** "Officer: I believe he said it was a female driver.

**{¶53}** "Prosecutor: Ok  And what did you do with that information?

**{¶54}** "Officer: I was on North Cay [sic] Street at the time.  I proceeded through the intersection at the square onto South Clay Street and at that time I observed a vehicle coming northbound and as I got closer to the vehicle I saw that it may have match [sic] the description of the vehicle that was given to the phone call.  It turned right onto Adams Street and I proceeded after it and saw that the license plate matched.

**{¶55}** "Prosecutor: Ok  Did you observe any bad driving or any activity that…

**{¶56}** "Officer: No

**{¶57}** "Prosecutor: What did you do next?

**{¶58}** "Officer: The vehicle pulled into the CSB bank on South Clay Street.  It pulled up to the ATM and stopped.  I came up behind the vehicle and stopped and got out made contact with the driver while she was parked at the ATM.

**{¶59}** "Prosecutor: And again do you confirm the [sic] it was the same make and model, the license plate number of the information from dispatch?

**{¶60}** "Officer: Yes.

**{¶61}** "* * *

**{¶62}** "Prosecutor: Ok  Did you initially smell anything with the window coming down?

**{¶63}** "Officer: Yes.  When the window went down, it was actually already down when she was at the ATM, and as I talked her her [sic] and she was talking to me I could smell an alcoholic beverage on her breath."

**{¶64}** Tr. at 14-16

**{¶65}** Upon review of the evidence presented at the suppression hearing, we find similar to as we did in *Burnap* the gas station attendant did not sufficiently indicate bad driving or inappropriate activity or behavior to indicate Appellant was operating a vehicle while intoxicated prior to Appellant's stop. The facts provided by Jack Butler, when relayed to Deputy Strother, were insufficient to demonstrate a reasonable and articulable suspicion Appellant was engaged in unlawful behavior. Officer Strother did not himself observe Appellant engage in any unlawful activity. The additional information obtained by law enforcement after the stop cannot be used to retroactively support a reasonable and articulable suspicion of criminal activity. Accordingly, we conclude the trial court erred in denying Appellant's motion to suppress.

**{¶66}** The judgment of the Holmes County Municipal Court is reversed, and the matter remanded to that court for further proceedings in accordance with the law and this opinion.

By: Hoffman, P.J.

Wise, J. and

Baldwin, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Craig R. Baldwin_____
HON. CRAIG R. BALDWIN

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| PAMELA HIPP | : | |
| | : | |
| Defendant-Appellant | : | Case No. 12CA013 |

For the reasons stated in our accompanying Opinion, the judgment of the Holmes County Municipal Court is reversed, and the matter is remanded to that court for further proceedings in accordance with the law and this opinion.  Costs to Appellee.

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Craig R. Baldwin_____
HON. CRAIG R. BALDWIN