[Cite as *State v. Parson*, 2013-Ohio-2763.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25399 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-339 |
| v. | : | |
| | : | |
| TRAVIS B. PARSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of June, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

PAMELA L. PINCHOT, Atty. Reg. #0071648, Clyo Professional Center, 7960 Clyo Road, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Travis Parson appeals from his conviction and sentence for

Tampering With Evidence. Parson contends that the trial court erred by overruling his motion to suppress evidence, because the officers who stopped his vehicle did not have reasonable, articulable suspicion of criminal activity.

{¶ 2} We conclude that the trial court did not err in overruling Parson's motion to suppress evidence, because the police dispatch on which the officers relied to initiate the traffic stop was based on a reliable telephone tip. Accordingly, the judgment of the trial court is Affirmed.

## I. The Police Stop a Vehicle Driven by Parson Based on a
## Telephone Tip Received by the Police Dispatch

{¶ 3} The trial court made the following findings of fact based on the testimony presented at the suppression hearing:

City of Dayton Police Officer David House ("House") testified that on February 1, 2012 at approximately 3:30 a.m., he responded to a dispatch that a person had called in that [a] black male in a grey Oldsmobile was driving while intoxicated and the caller had refused to get into the car with him. The caller gave her name and telephone number, as well as the name of the allegedly intoxicated driver. The caller stated that the intoxicated driver was in the All In One parking lot on James H. McGhee [sic] Blvd. House testified that as he approached the All in One, he saw a grey Buick exit the parking lot followed by another Dayton police cruiser. The officer in the other cruiser initiated a stop on the Buick, which was driven by Defendant Travis B. Parson ("Parson").

House testified that there was a black female passenger in the car as well. House further stated that he made contact with Defendant and asked for identification. Defendant was not able to provide any, but gave his name as Willie Parson and provided a social security number. House asked Defendant's age and birthdate. Defendant hesitated and stated that his birthday was June 3, 1969 and that he was 45 years old. If Defendant had been born on such date, he would have been 43 years. House testified that Defendant was not intoxicated but he became suspicious that Defendant was hiding his true identity and asked him to step out of the car. When Defendant exited the vehicle, [H]ouse saw a large knife on the floor board of the car. House then patted Defendant down for officer safety.

House testified that he felt a crack pipe during the pat-down. House then informed Defendant that he was under arrest and commenced a search of Defendant's person incident to arrest. House further testified that he observed Defendant remove what he believed to be a rock of crack cocaine from the fold in his hat and pop it into his mouth. House and another officer on the scene struggled with Defendant to get him to spit it out, which he ultimately did after being pepper sprayed.

House then when [sic] to Defendant's vehicle to retrieve the knife and found a piece of crack cocaine. Defendant was then mirandized. House testified that the name Willie Parson was run through the computer and it showed that Willie Parson was on federal probation. Defendant then told the police his true name. Parson is not the name given to the police dispatch by the person calling in

about the intoxicated driver.

Brent Parrish then testified that he was working as a Montgomery County Corrections Officer the night that Defendant was booked in the jail. Parrish testified that Defendant did not make any statements about contraband. Dkt. 21, p. 1-2.

{¶ 4} There is evidence in the record to support the trial court's findings. We note, further, that Officer House testified that the tip was received at 3:35 a.m., the call was dispatched at 3:37 a.m., and House and the other officer, identified in the record simply as Officer Harding, arrived on the scene at 3:39 a.m.

## II. Course of the Proceedings

{¶ 5} In March 2012, Parson was indicted on one count of Tampering With Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. Parson moved to suppress evidence obtained during the traffic stop, arguing that the traffic stop was not based on a reasonable, articulable suspicion of criminal activity. After a hearing, the trial court overruled the motion to suppress. Parson then pled no contest to Tampering With Evidence. The trial court found Parson guilty of the offense, and sentenced Parson to twelve months in prison.

{¶ 6} From the judgment, Parson appeals

## III. The Police Had a Reasonable, Articulable Suspicion of Criminal Activity

{¶ 7} Parson's sole assignment of error states:

THE TRIAL COURT ERRED IN OVERRULING

DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AS THE DAYTON POLICE OFFICER DID NOT HAVE REASONABLE, ARTICULABLE SUSPICION AND/OR PROBABLE CAUSE TO STOP AND DETAIN THE DEFENDANT-APPELLANT AND, THEREFORE, VIOLATED THE RIGHTS GUARANTEED TO THE DEFENDANT-APPELLANT BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 8} In deciding a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*. We have reviewed the evidence presented at the suppression hearing and find that the trial court's findings of fact are supported by competent, credible evidence in the record.

{¶ 9} Parson's motion to suppress raises search and seizure issues under the Fourth Amendment to the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Searches and seizures conducted without a warrant are per se unreasonable unless they come

within one of the " 'few specifically established and well delineated exceptions.' " *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Thompson v. Louisiana*, 469 U.S. 17, 19-20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984).   Evidence is inadmissible if it stems from an unconstitutional search or seizure.   *Wong Sun v. United States*, 371 U.S. 471, 484-485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**{¶ 10}** "An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement."   *State v. Carrocce*, 10th Dist. Franklin No. 06AP-101, 2006-Ohio-6376, ¶ 28, citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 30-31, 88 S.Ct. 1868, 29 L.Ed.2d 889 (1968).   An officer may conduct an investigative *Terry* stop on an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent.   *Terry* at 20, 21, 30, 31.

**{¶ 11}** Here, Officers House and Harding initiated the investigative stop in response to a police dispatch that was based on a telephone tip from an identified female who indicated that a black male driving a gray Oldsmobile was intoxicated in the All-In-One parking lot.   "Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity."   *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 720 N.E.2d 507 (1999), paragraph one of the syllabus.   "A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability."   *Id.* at paragraph two of the syllabus.   The informant's veracity, reliability, and basis of knowledge are highly relevant factors in determining the value of the informant's tip.   *Id.* at 299.

**{¶ 12}** Based on the testimony of Officer House, the trial court found, in pertinent part:

House testified that Defendant was driving a grey vehicle out of the exact location identified by the caller in the original dispatch regarding an intoxicated driver. The Court finds that the timing, color of the vehicle and its locations justified the stop of the car to determine whether the driver was intoxicated. Thus, asking his name and for identification was appropriate. Furthermore, Defendant began to act suspiciously when asked for such background information, and House determined correctly that Defendant was not who he said he was. Thus, the Court finds that there was a reasonable, articulable suspicion of criminal activity that justified the investigatory stop and detention of Defendant under *Terry*. Dkt. 21, p. 3.

{¶ 13} At 3:35 a.m., the police dispatch received a telephone tip from a female who gave her name and phone number. The caller stated that "the individual [the driver] was intoxicated and that they had been arguing and that for that reason the caller in decided not to get into the vehicle with [the driver]." The caller's report supports a reasonable inference that she and the driver had interacted sufficiently for her to have formed an opinion that the driver was intoxicated. We conclude that the telephone tip was sufficiently reliable to justify the traffic stop when Officers Harding and House, at 3:39 a.m., saw Parson pulling out in a gray vehicle from a virtually empty All-In-One parking lot four minutes after the telephone tip was received.

{¶ 14} Parson contends that the officers could not reasonably rely upon the tip, because the tip reported that the possibly intoxicated person was driving a gray Oldsmobile, whereas Parson was driving a gray Buick LeSabre. But Officer House testified that he did not know, when the stop was made, that Parson's vehicle was a Buick LeSabre; he just knew it was gray.

**{¶ 15}** We conclude that the trial court did not err in overruling Parson's motion to suppress. Parson's sole assignment of error is overruled.

## IV. Conclusion

**{¶ 16}** Parson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., dissenting:

**{¶ 17}** The caller gave her name and telephone number, thus falling into the broad category of a "known" informant, although the record reflects nothing regarding her relationship, if any, to the Appellant, her state of sobriety, the basis for her conclusion of intoxication, etc. . . . The caller only said a Shawn Brooks was in the parking lot driving a gray Oldsmobile and was intoxicated.

**{¶ 18}** Two officers were on the scene quickly and saw a gray vehicle pull out of the parking lot and initiated a traffic stop. There is no indication in the record that Appellant was violating any traffic laws or doing anything suspicious. The only justification for the stop was a named informant's saying the driver - Shawn Brooks - was "intoxicated." I agree with the majority that a strong showing as to other indicia of reliability may be unnecessary to justify a *Terry* stop, based on the tip of a "known informant." *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999). However, "[s]imple corroboration of neutral details describing the suspect or other conditions existing at the time of the stop, without more, will not produce

reasonable suspicion for an investigatory stop." *State v. Ramsey*, 10th Dist. Franklin App. No. 89AP-1298, 1990 WL 135867, *4 (Sept. 20, 1990.)

{¶ 19} For example, in *State v. Hipp*, 5th Dist. Holmes No. 12CA013, 2013-Ohio-1684, the caller was an identified cashier at a convenience store who called 911 about a customer and said he "smelled alcohol on her breath." He gave the dispatcher a description of the car, the license number, and the direction the vehicle had proceeded.

{¶ 20} An officer pulled over the vehicle soon thereafter, but did not observe any bad driving or other suspicious activity. The Court of Appeals held that the "attendant did not sufficiently indicate bad driving or inappropriate activity or behavior to indicate Appellant was operating a vehicle while intoxicated prior to Appellant's stop" and the deputy "did not himself observe Appellant engage in any unlawful activity." Therefore, any fruits of the stop should have been suppressed. *Id; See, also, State v. Brant*, 10th Dist. Franklin No. 01AP-342, 2001-Ohio-3994 and *State v. Bernap*, 5th Dist. Delaware No. 11CAC090086, 2012-Ohio-2047.

{¶ 21} I would find that the officers did not have sufficient suspicion for an investigatory stop.

. . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
April F. Campbell
Pamela L. Pinchot
Hon. Barbara P. Gorman