[Cite as *State v. Hancock*, 2016-Ohio-2671.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,                                    CASE NO. 2-15-17

    PLAINTIFF-APPELLEE,

    v.

KYLE B. HANCOCK,                              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2015 TRC 05570

Judgment Affirmed

Date of Decision:  April 25, 2016

APPEARANCES:

    *Kenneth J. Rexford* **for Appellant**

    *Nick Catania* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, Kyle B. Hancock ("Hancock"), brings this appeal from the judgment of the Auglaize County Municipal Court, which overruled his motion to suppress and found him guilty of OVI (operation of a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them), in violation of R.C. 4511.19(A)(1)(b). For the reasons that follow, we affirm the trial court's judgment.

*Factual and Procedural Background*

{¶2} In the early morning hours of July 26, 2015, the Wapakoneta Police Department's dispatcher received a call from an employee at a McDonald's restaurant. The employee identified herself and reported that there was a drunk driver in their drive-through lane. She then described the subject vehicle and indicated that a couple of customers had complained about the individual and that they did not feel comfortable with him being on the road. She additionally stated that the individual almost hit the building.

{¶3} Patrolman Jim Cox ("Patrolman Cox"), from the Wapakoneta Police Department, was sent to investigate. When Patrolman Cox arrived at the scene, the vehicle described to him was still in the drive-through lane. Patrolman Cox did not make any personal observations of the driver operating his vehicle under the influence. He approached the vehicle from the passenger side and asked the driver to pull into a parking spot for further investigation.

{¶4} As a result of the investigation, the driver of the vehicle, Hancock, was charged with OVI in violation of R.C. 4511.19. (R. at 1.) Hancock pled not guilty and filed a motion to suppress arguing that Patrolman Cox did not have a reasonable and articulable suspicion for the initial stop and investigation. (R. at 22.) Hancock thus argued that the warrantless detention was unjustified, resulting in all evidence in this case being illegally obtained. After a hearing on the issue, the trial court overruled the motion. (R. at 29.) Hancock then entered a plea of no contest to a violation of R.C. 4511.19(A)(1)(b), a second offense in six years, and was found guilty by the trial court. (R. at 42.) He filed this appeal and alleges one assignment of error as quoted below.

**THE TRIAL COURT ERRED BY DENYING MR. HANCOCK'S MOTION TO SUPPRESS, IN VIOLATION OF HIS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS.**

### *Standard of Review*

{¶5} An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Norman*, 136 Ohio App.3d 46, 51, 735 N.E.2d 953 (3d Dist.1999). We will accept the trial court's factual findings if they are supported by competent, credible evidence because the "evaluation of evidence and the credibility of witnesses" at the suppression hearing are issues for the trier of fact. *State v. Mills*, 62 Ohio St.3d 357, 366, 582

N.E.2d 972 (1992); *Burnside*, 2003-Ohio-5372, at ¶ 8; *Norman*, 136 Ohio App.3d at 51.  But we must independently determine, without deference to the trial court, whether these factual findings satisfy the legal standard as a matter of law because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review."  *Norman*, 136 Ohio App.3d at 52; *Burnside*, 2003-Ohio-5372, at ¶ 8.

## *Analysis*

**{¶6}** The sole issue raised on appeal is the constitutionality of the traffic stop.[1]  Hancock's contention that the traffic stop was unconstitutional stems from the fact that Patrolman Cox stopped him without a warrant.

**{¶7}** The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures, and a warrantless search is per se unreasonable unless certain "specifically established and well delineated exceptions" exist.  *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988), *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7 (2008).  When a criminal defendant challenges a warrantless search, the state bears the burden of proving that the "Fourth Amendment

---

[1] We note that although the assignment of error refers to the "Ohio and United States Constitutions," the argument on appeal does not specifically cite to either, and only mentions the "Fourth Amendment" in its conclusion. (App't Br. at 12.)  The argument on appeal focuses on cases reviewing the stop under the standard of reasonableness required by the Fourth Amendment to the United States Constitution. Therefore, we confine our analysis to the same standard.  Because Hancock's brief does not support an assertion that the Ohio Constitution has been violated, we reject the assertion. *See State v. Chilcutt*, 3d Dist. Crawford No. 3-03-16, 2003-Ohio-6705, ¶ 12 ("It is not appropriate for this court to construct the legal arguments in support of an appellant's appeal."); *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 7 ("An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."); *see also* App.R. 16(A)(7); App.R. 12(A)(2).

standards of reasonableness" have been satisfied. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E.2d 507 (1999). We must determine whether the State satisfied this burden in this case.

{¶8} A warrantless vehicle stop is constitutionally valid "if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *Mays* at ¶ 7. A reasonable and articulable suspicion exists when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We judge the facts under an objective standard of "a man of reasonable caution" in like circumstances. *Bobo* at 178-179.

{¶9} It is important to note that while generally the inquiry is into the facts known by the officer who initiated the stop, "when an investigative stop is made in *sole* reliance upon a police dispatch, different considerations apply." (Emphasis added.) *Weisner* at 297. The Ohio Supreme Court reasoned that

> A police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer. *United States v. Hensley* (1985), 469 U.S. 221, 231, 105 S.Ct. 675, 681, 83 L.Ed.2d 604, 613. This principle is rooted in the notion that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Id.* at 231, 105 S.Ct. at

682, 83 L.Ed.2d at 614, quoting *United States v. Robinson* (C.A.9, 1976), 536 F.2d 1298, 1299. When a dispatch is involved, therefore, the stopping officer will typically have very little knowledge of the facts that prompted his fellow officer to issue the dispatch. The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers *relying upon a dispatch or flyer* "were themselves aware of the specific facts which led their colleagues to seek their assistance." It turns instead upon "whether the officers who *issued* the flyer" or dispatch possessed reasonable suspicion to make the stop. (Emphasis *sic.*) *Id.* at 231, 105 S.Ct. at 681, 83 L.Ed.2d at 613 (discussing and applying *Whiteley v. Warden, Wyoming State Penitentiary* [1971], 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, to reasonable suspicion in the context of a police flyer). Thus, "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." *Hensley,* 469 U.S. at 232, 105 S.Ct. at 682, 83 L.Ed.2d at 614.

(Emphasis sic.) *Id.* at 297. The Ohio Supreme Court clarified that "where an officer making an investigative stop *relies solely upon a dispatch*, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." (Emphasis sic.) *Id.* at 298.

{¶10} Therefore, in a situation such as here, where the information possessed by the dispatcher is based solely on an informant's tip, we must evaluate "the weight and reliability due that tip." *Weisner*, 87 Ohio St.3d at 299, 1999-Ohio-68, 720 N.E.2d 507. "The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id.* "Factors considered 'highly relevant in determining the value of [the informant's] report' are the informant's veracity, reliability, and basis of knowledge." *Id.*, quoting

*Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). While an anonymous informant is considered "comparatively unreliable" and requires independent police corroboration, an identified citizen informant "may be highly reliable and therefore, a strong showing as to the other indicia of reliability may be unnecessary." *Id.* at 300. Accordingly, identified citizen informants have been "routinely credited" with greater reliability. *Id.* As to the informant's basis of knowledge, the courts consider "personal observation" to be more reliable than "a secondhand description." *Id.* at 302. Other elements that add credibility are "immediacy" of the citizen's call, "as it avoids reliance upon the informant's memory," and the informant's motivation. *Id.* It is important to remember, however, that all these factors are reviewed together under the totality of the circumstances and therefore, we do not review each articulated reason for the stop in isolation. *Id.*; *see State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282 (2007), paragraph two of the syllabus.

{¶11} Failure to call the dispatcher or the informant to testify at the suppression hearing is not fatal to the state's burden. *See Weisner* at 298-299. The court can consider the police officer's testimony "in assessing whether the facts known to the dispatcher were sufficient to justify the stop," where no one argues that the officer's testimony is unreliable. *Id.* Accordingly, in *Weisner* the Ohio Supreme Court found the state's burden satisfied based on the police officer's testimony about the facts known to the dispatcher. The informant in that

case identified himself to the dispatcher by "providing his name and cellular and home phone numbers." *Id.* at 295. The caller was following a car and describing its activities while on the phone with the dispatch. *Id.* Although the caller's identity was not confirmed and the police officer did not witness the car driving erratically or weaving, the totality of the circumstances was sufficient to provide a reasonable and articulable suspicion of operating a vehicle under the influence. *Id.* at 295, 302-303.

{¶12} This case is similar to *Weisner* in that Patrolman Cox relied solely on the dispatch in initiating the stop, and the dispatching officer or the informant did not testify at the suppression hearing. We must therefore evaluate the weight and credibility of the informant's tip based on the information presented at the suppression hearing.

{¶13} During the hearing, the State offered testimony of Patrolman Cox and submitted one exhibit, which was a CD with audio recording of the phone call received by the dispatcher.[2] (*See* Tr. of Proceedings ("Tr."); State's Ex. A.) The contents of the recording indicate that the caller was a McDonald's employee, who identified herself by her first and last name, provided her phone number, and said, "I have a customer in my drive-through that is extremely drunk and he almost hit our building." (State's Ex. A.) She further stated, "we had a couple of complaints about him" from people in the line who said they were uncomfortable with him

---

[2] Hancock stipulated that the CD contained a recording of the phone call at issue. (Tr. at 8.)

being on the road. (*Id.*) The caller described the car, which was still in the drive-through, and promised to "keep him there." (*Id.*) Patrolman Cox testified that his office had received "drunk driver complaints" from employees at McDonald's before and that most of those complaints had proven to be reliable. (Tr. at 4.) He admitted, however, that there have been some unreliable tips as well. (Tr. at 7.)

{¶14} Hancock raises several issues in his argument that the information provided to the dispatch did not have sufficient indicia of reliability to justify the warrantless stop. First, he suggests that "almost striking a restaurant while in a drive-through lane" is not necessarily indicative of "being drunk." (App't Br. at 3, 10-11.) But no law is provided to suggest that it is an error to consider an act of almost hitting a restaurant as indicia of being under the influence. Nor was there any evidence provided in the trial court to show that almost striking a building is a normal occurrence for every driver in the drive-through lane, as Hancock argues on appeal. (*See id.*)

{¶15} Second, Hancock speculates that the identified employee of McDonald's had no personal knowledge of Hancock being under the influence but instead relied on information provided to her by other unidentified customers in the drive-through lane. He thus suggests that we should analyze the information provided to the dispatcher as if it came from an anonymous informant. (*Id.* at 3, 9.) Once again, no evidence or law is offered in support of this position. The Ohio Supreme Court did not classify an informant as anonymous based on his or

her basis of knowledge. Instead, it referred to an "identified citizen informant," acknowledging that a person who provides their personal information is aware of possible criminal liability for misleading the police and thus, " 'rigorous scrutiny' " of their basis of knowledge is unnecessary. *Weisner*, 87 Ohio St.3d at 300, 1999-Ohio-68, 720 N.E.2d 507, quoting *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**{¶16}** Third, Hancock claims that the tipster in this case was not reliable and should not have been given weight because Patrolman Cox admitted that sometimes tips from McDonald's have proven to not be reliable. (App't Br. at 3, 8-9.) Hancock mischaracterizes and misapplies Patrolman Cox's testimony. There was no testimony that the tipster in this case, the particular employee of the specific McDonald's in Wapakoneta, had ever provided unreliable information. There was, however, testimony that in general, most complaints from McDonald's employees had proven to be reliable, with some exceptions for unreliable tips. (Tr. at 4, 7.) Therefore, we reject a suggestion that the tipster was unreliable, where there is no evidence challenging this tipster's reliability.

**{¶17}** Fourth, Hancock asserts that this case should be reversed based on the reasoning applied by the United States Supreme Court in *Navarette v. California*, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014). (*Id.* at 3, 6-8.) But the reasoning and holding of *Navarette* do not lend support to Hancock's position. In

*Navarette*, the court reviewed a tip from an *unidentified*[3] informant, who called to report that a vehicle had run her off the road. *Id.* at 1686. The court concluded that such "conduct bears too great a resemblance to paradigmatic manifestations of drunk driving to be dismissed as an isolated example of recklessness." *Id.* at 1691. While recognizing that this behavior might also be explained by non-criminal conduct, such as "a driver responding to 'an unruly child or other distraction,' " the court emphasized that "reasonable suspicion 'need not rule out the possibility of innocent conduct.' " *Id.* The *Navarette* court distinguished unsupported conclusory tips of a suspected criminal activity from tips that have some detail about the personal observation of the dangerous behavior, here running another vehicle off the road. *Id.* at 1689-1691. But the holding of the case was based on the "totality of the circumstances," rather than on a single factor in the case. *Id.* at 1692.

{¶18} Unlike *Navarette*, this case presents an identified citizen informant, who, according to *Weisner*, is credited with greater reliability. *See Weisner*, 87 Ohio St.3d at 299, 1999-Ohio-68, 720 N.E.2d 507. The informant was relaying the events as they were occurring, while keeping the suspected driver in her drive-through lane. Thus, the immediacy of her tip affords reliability. *See id.* at 302; *see also Navarette* at 1683 (suggesting that "the caller reported the incident soon

---

[3] The *Navarette* court recognized that technological advancements caused an anonymous tip to be more reliable due to the "features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity." *Id.* at 1689-1690.

after she was run off the road. That sort of contemporaneous report has long been treated as especially reliable."). The recording indicates that the tipster was personally observing the suspected driver while "keeping" him in her drive-through lane, although she also indicated that some of her knowledge was based on the information received from other customers. *See Weisner* at 302; *Navarette* at 1689 ("By reporting that she had been run off the road by a specific vehicle * * * the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving."). There are no allegations that the tipster was motivated by anything other than concerns for the safety of the driver and others on the road. *See Weisner* at 302. Finally, the tipster added an account of a specific event, almost hitting a building, and complaints from other customers, to support her suspicion of a "drunk driver." Therefore, this case involves more than just an unsupported conclusory tip of suspected criminal activity. *See Navarette* at 1689-1691.

{¶19} We hold that the trial court properly analyzed the totality of the circumstances in this case and found that the informant's report had sufficient indicia of reliability to justify the investigative stop. We reject Hancock's arguments that would have us require *evidence*, rather than a reasonable and articulable *suspicion*, of criminal activity to justify the investigative stop. *See Navarette* at 1687 ("the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence' "), quoting

*United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Accordingly, we overrule the assignment of error.

### *Conclusion*

{¶20} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Auglaize County Municipal Court is therefore affirmed.

*Judgment Affirmed*

**SHAW, P.J. and ROGERS, J., concur.**

**/hlo**