[Cite as *State v. Averesch*, 2025-Ohio-5106.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,  CASE NO. 12-24-05

    PLAINTIFF-APPELLEE,

  v.

JUSTIN AVERESCH,  OPINION AND
 JUDGMENT ENTRY

    DEFENDANT-APPELLANT.

Appeal from Putnam County Municipal Court
Trial Court No. 2023 TRC 01269

Judgment Affirmed

Date of Decision:  November 10, 2025

APPEARANCES:

    *April F. Campbell* for Appellant

    *Nicole M. Smith* for Appellee

**WILLAMOWSKI, J.**

{**¶1**} Defendant-appellant Justin J. Averesch ("Averesch") appeals the judgment of the Putnam County Municipal Court, asserting that the trial court erred by denying his motion to suppress and by imposing an excessive fine. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} On October 21, 2023, Jamie M. Dickey ("Dickey") was working as the assistant manager of the Shell Party Mart ("Party Mart") in Putnam County. At around 2:00 P.M., Averesch entered the drive-thru at the store and purchased a six-pack of Busch Light. Roughly four hours later, he returned to the drive-through and purchased another six-pack of Busch Light.

{**¶3**} Dickey affirmed that, during this second transaction, Averesch was "different." (Tr. 8). She noticed that his "eyes were as red as his car" and his face was "real red." (Tr. 8). Dickey was familiar with Averesch as a customer at the Party Mart and also said that he did not sound "typical" as they talked. (Tr. 7). When she went to hand Averesch his card, he reached out in the wrong direction to retrieve it from her. Dickey stood with his card for "three, four minutes waiting for him to respond . . . ." (Tr. 7).

{¶4} Believing that Averesch was intoxicated, Dickey decided to report him after the sale had been completed. While Dickey was on the phone with dispatch, Averesch returned to the drive-through a third time to purchase some cigarettes. However, he "forgot [the] cigarettes" when he left. (Tr. 7). Dickey testified that she observed his vehicle "creep out" of the drive-thru. (Tr. 7). Dickey continued to watch Averesch's vehicle and saw him drive "left of center in the middle of the road . . . ." (Tr. 7).

{¶5} Officer Russell Lammers ("Officer Lammers") of the Ottawa Police Department was dispatched to respond to Dickey's report. He was informed that Averesch was driving a red Dodge Challenger southbound on Taft Street. Since he was in the vicinity of the Party Mart, Officer Lammers was able to locate Averesch's vehicle at the identified location within a few minutes.

{¶6} As he drove closer, Averesch appeared to be in the process of parking his vehicle on the side of the street. Officer Lammers testified that he pulled behind Averesch's vehicle and activated the lights on his cruiser. He then made contact with Averesch and "immediately smelled a strong odor of [an] alcoholic beverage coming from inside the vehicle." (Tr. 15).

{¶7} On October 23, 2023, a complaint was filed that charged Averesch with a count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI") in violation of R.C. 4511.19(A)(1)(a). Since he had received two previous OVI convictions in the past ten years, the present offense was

charged as an unclassified misdemeanor. He was also charged with one count of OVI involving the refusal to submit to chemical testing in violation of R.C. 4511.19(A)(2).

{¶8} On February 14, 2024, Averesch filed a motion to suppress, arguing that the traffic stop in this case was not supported by a reasonable and articulable suspicion of criminal activity. On February 26, 2024, the State called Dickey and Officer Lammers to testify at a suppression hearing. On March 25, 2024, the trial court denied the motion to suppress.

{¶9} On May 9, 2024, Averesch pled no contest to one count of OVI in violation of R.C. 4511.19(A)(1)(a) as an unclassified misdemeanor. The remaining charge was dismissed on motion of the State. On May 30, 2024, the trial court held a forfeiture hearing to address the disposition of Averesch's vehicle. The trial court issued its judgment entry of sentencing on May 30, 2024. Averesch was ordered to forfeit the vehicle operated during the offense.

{¶10} Averesch filed his notice of appeal on June 28, 2024. On appeal, he raises the following three assignments of error:

**First Assignment of Error**

**The trial court should have granted Averesch's motion to suppress because the trial court's fact finding, used as the basis for not suppressing the evidence, was not supported by competent, credible evidence.**

-4-

**Second Assignment of Error**

**The officer lacked a reasonable articulable suspicion of criminal activity to stop Averesch, requiring suppression of the evidence against him.**

**Third Assignment of Error**

**The trial court imposed an excessive fine on Averesch by forfeiting his vehicle under the Ohio and Federal Constitutions.**

*First Assignment of Error*

{¶11} Averesch first argues that the findings underlying the trial court's decision to deny his motion to suppress were not supported by competent, credible evidence.

Legal Standard

{¶12} On appeal, "motions to suppress present 'mixed questions of law and fact.'" *State v. Kerr*, 2017-Ohio-8516, ¶ 18 (3d Dist.), quoting *State v. Yeaples*, 2009-Ohio-184, ¶ 20 (3d Dist.).

> At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. [*State v. Burnside*, 2003-Ohio-5372, ¶ 8]. . . . . When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8.

(Citations omitted.) *State v. Harpel*, 2020-Ohio-4513, ¶ 16 (3d Dist.), quoting *State v. Sidey*, 2019-Ohio-5169, ¶ 8 (3d Dist.).

> Accepting [the trial court's findings of] fact[] as true, the appellate court must then independently determine, without deference to the

conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Bracketed text in original.) *State v. Ferguson*, 2024-Ohio-1239, ¶ 12 (3d Dist.), quoting *Burnside* at ¶ 8.

## Legal Analysis

**{¶13}** Averesch raises two main arguments herein. First, he argues that the following finding of fact in the trial court's judgment entry was not supported by competent, credible evidence:

3. Ms. Dickey testified that she gave dispatch the information, 'the way you saw him driving.' Specifically, the Defendant was 'going in the middle of the road.'

(Doc. 51). During the suppression hearing, Dickey testified as follows:

[Prosecutor:] And then while you were on the phone with dispatch, you observed him operate his vehicle?

[Dickey:] Correct, he pulled north out of my drive-thru and then turned. I am not sure what street that is. He pulled north, and then he went east, and then went south. And then I lost him at the four-way stop by the fire department.

[Prosecutor:] So as you were watching him operate, you were giving dispatch that information where you saw him driving?

[Dickey:] Yes, yes.

[Prosecutor:] And you stated that as you were on the phone with dispatch, you did observe him go left of center?

[Dickey:] Yes. He was going in the middle of the road . . . .

(Tr. 8-9). Averesch argues that the trial court could not find from this testimony that Dickey informed dispatch that she saw him "go left of center[.]" (Tr. 9).

{¶14} As an initial matter, we note that the questions in this exchange were imprecise, creating some ambiguity in the transcript. In response, the State correctly points out that the line of inquiry was a discussion about what Dickey communicated to dispatch. The State asserts that, at the hearing, the tone, flow, and pacing of these statements made it clear that Dickey's responses were a continuation of what she was telling dispatch on the phone.[1] Since a transcript cannot convey these elements of Dickey's testimony, the State notes that deference is given to the findings in a judgment entry because trial judges have the opportunity to "view the witnesses and observe their demeanor, gestures, and voice inflections . . . ." *State v. Johnston*, 2022-Ohio-2097, ¶ 25 (12th Dist.).

{¶15} Beyond this larger context, we find that the language of the last question in this line of inquiry resolves this issue. In this final exchange, Dickey affirmed the following statement: "you stated that as you were on the phone with dispatch, you did observe him go left of center." (Tr. 9). This phrase could be reasonably interpreted to mean that Dickey told or "stated" to dispatch that she saw

---

[1] The State argues that the following statement was actually two questions separated by a pause: "[1] So as you were watching him operate, you were giving dispatch that information [2] where you saw him driving?" (Tr. 9). These two questions prompted the witness to respond, "Yes, yes." (Tr. 9). Thus, the State argues that this supports finding the final question in the exchange was a continuation of where Dickey saw Averesch driving and was part of what she told dispatch.

him go left of center while she was talking on the phone. (Tr. 9). This plain reading of Dickey's statement is evidence that directly supports the challenged finding.

{¶16} While the parties present conflicting interpretations of Dickey's testimony, appellate courts are to interpret evidence that is "susceptible to more than one interpretation" consistently with the trial court's determination in the process of examining whether the findings are supported by some competent, credible evidence. *State v. Wilson*, 2018-Ohio-902, ¶ 28 (11th Dist.). *See also State v. Frank,* 2018-Ohio-5148, ¶ 47 (5th Dist.); *State v. Virden*, 2005-Ohio-6446, ¶ 19 (7th Dist.); *Johnston* at ¶ 25.

{¶17} Given the context and content of the identified exchange, the trial court could find that Dickey informed dispatch that she saw Averesch drive in the middle of the roadway. For this reason, we conclude that Averesch's first argument has failed to demonstrate that the challenged finding was not supported by some competent, credible evidence.

{¶18} Second, Averesch points out that the trial court's third finding did not accurately copy several words in the statements that were quoted from the transcript. However, the most important part of this finding is the fact that the trial court interpreted Dickey's testimony to mean that she told dispatch that Averesch was driving in the middle of the road. If the correct language is inserted into the third finding, the evidentiary significance of this statement remains the same. For this reason, we conclude that this second argument fails to establish that the identified

finding is not supported by competent, credible evidence. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶19}** Averesch argues that the police did not have a reasonable, articulable suspicion to conduct a traffic stop of his vehicle.

Legal Standard

**{¶20}** The Fourth Amendment to the U.S. Constitution protects citizens "against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV. The Ohio Constitution offers a parallel provision to the Fourth Amendment of the Federal Constitution that affords the same level of protection as the U.S. Constitution. Ohio Const. Art. I, § 14; *State v. Hoffman*, 2014-Ohio-4795, ¶ 11.

**{¶21}** "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967). Thus, "[t]he touchstone of the Fourth Amendment is reasonableness." *Jimeno* at 250. "[A] police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment." *Kerr*, 2017-Ohio-8516, at ¶ 13 (3d Dist.), citing *Delaware v. Prouse*, 440 U.S. 648 (1979).

**{¶22}** "In order to initiate a constitutionally permissible traffic stop, law enforcement must, at a minimum, have a reasonable, articulable suspicion to believe that a crime has been committed or is being committed." *State v. Smith*, 2018-Ohio-

1444, ¶ 8 (3d Dist.). A reasonable articulable suspicion is present where "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement]." (Brackets sic.) *State v. Shaffer*, 2013-Ohio-3581, ¶ 18 (3d Dist.), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). A reasonable articulable suspicion requires objective justification that must be more than a "hunch" but need not rise to the level of probable cause. *Kerr* at ¶ 15.

{¶23} While courts generally examine the knowledge of the police officer at the time of the traffic stop, "different considerations apply" in circumstances where "an investigative stop is made in sole reliance upon a police dispatch . . . ." *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999). In such a situation, the analysis does not turn upon whether the officer effectuating the traffic stop was aware of the requisite facts needed to take this action but on whether those who issued the dispatch possessed the requisite justification. *Id*. at 231. "[W]here an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." (Emphasis sic.) *Id*. at 298.

{¶24} When the dispatcher's information comes exclusively from an informant's tip, courts must examine that tip to determine its "weight and reliability." *Weisner* at 299. Courts generally begin this analysis by considering whether the tip came from an "(1) anonymous informant, (2) known informant

(someone from the criminal world who has provided previous reliable tips), and (3) identified citizen informant." *State v. Tidwell*, 2021-Ohio-2072, ¶ 29.

**{¶25}** Since an anonymous informant is generally considered less reliable than the other classes of informants, a tip from such a source will generally "require independent police corroboration in order to demonstrate some indicia of reliability." *Tidwell* at ¶ 31. "[A]n identified citizen informant may be highly reliable and, therefore, a strong showing as to other indicia of reliability may be unnecessary." *Id*. However,

> [t]he categorization of the informant is not outcome-determinative and instead is only one element of the totality of the circumstances analysis. 'A non-exhaustive list of other considerations includes whether the tipster personally observed the crime being reported, whether the tipster identified himself or herself, whether the tipster used the 911 emergency system, whether the tip was about a past or presently occurring crime, whether the tip contained particularized details and predictive information, and any motivation the tipster may have had in conveying the tip.'

*State v. Wolfe*, 2025-Ohio-2096, ¶ 15 (5th Dist.), quoting *State v. Tincher*, 2022-Ohio-1701, ¶ 10 (9th Dist.). Importantly, "all these factors are reviewed together under the totality of the circumstances and therefore, we do not review each articulated reason for the stop in isolation." *State v. Angers*, 2021-Ohio-3640, ¶ 15 (3d Dist.), quoting *State v. Hancock*, 2016-Ohio-2671, ¶ 10 (3d Dist.).

**{¶26}** "To deter Fourth Amendment violations, the Supreme Court of the United States has adopted an exclusionary rule under which 'any evidence that is obtained during an unlawful search or seizure will be excluded from being used

-11-

against the defendant.'" *Kerr*, 2017-Ohio-8516, at ¶ 17 (3d Dist.), quoting *State v. Steinbrunner*, 2012-Ohio-2358, ¶ 12 (3d Dist.). "Thus, the appropriate remedy for a Fourth Amendment violation is generally the suppression of any illegally obtained evidence." *Harpel*, 2020-Ohio-4513, at ¶ 16 (3d Dist.).

Legal Analysis

**{¶27}** Averesch raises two main arguments herein. First, he argues that the tip from Dickey was not of sufficient reliability and did not contain sufficient information to provide law enforcement with a reasonable articulable suspicion of criminal activity. *See Tidwell*, 2021-Ohio-2072, at ¶ 20. As to the reliability of the tip, the information that formed the basis of the traffic stop came from an identified citizen informant who indicated that she worked at the Party Mart. *See Angers*, 2021-Ohio-3640, at ¶ 21 (3d Dist.) (A tipster providing identifying information, including the name and location of her place of employment, is an indicator of reliability.).

**{¶28}** Dickey then called dispatch to communicate her concerns directly to law enforcement. *See State v. Gates*, 2020-Ohio-4027, ¶ 23 (5th Dist.). The information she provided was based on her personal interactions with Averesch and her eyewitness observations of his condition and conduct. *See State v. Borum*, 2014-Ohio-5639, ¶ 8 (9th Dist.) (Personal observations are more reliable than "a secondhand description.").

{¶29} The record also establishes that Dickey described a situation that was occurring contemporaneously to her conversation with the dispatcher. *Hancock*, 2016-Ohio-2671, at ¶ 10, 18 (3d Dist.) (An immediate report is more reliable than a tip based on the informant's memory.). While on the phone, Dickey provided updates to the dispatcher about Averesch's movements as he traveled away from her location. *See State v. Houston*, 2023-Ohio-4101, ¶ 20 (5th Dist.) ("[T]he fact that the tip was an exact relay of the circumstances as they were occurring" was an indicator of reliability).

{¶30} Dickey also supplied accurate information about the type of vehicle Averesch was driving and the location in which he was traveling. *See State v. Boiani*, 2013-Ohio-1342, ¶ 12 (8th Dist.) (An informant's "accurate description" of the defendant's vehicle was considered in assessing the reliability of the tip.); *State v. Smith*, 2019-Ohio-4370, ¶ 29 (2d Dist.). Based on these facts, we conclude that the trial court did not err in concluding that Dickey was a "highly reliable tipster." (Doc. 51). *See also State v. McKinney*, 2016-Ohio-5737, ¶ 19 (5th Dist.); *State v. Rasheed*, 2021-Ohio-4509, ¶ 27-29 (6th Dist.); *State v. Abercrombie*, 2002-Ohio-2414, ¶ 15-16 (12th Dist.).

{¶31} As to the content of the information provided to dispatch, Dickey reported that Averesch had purchased a six pack of beer at a drive-thru. *See State v. Reed*, 2010-Ohio-299, ¶ 49 (2d Dist.). She also stated that he looked "completely

drunk" and that "his eyes were as red as his car." (Tr. 8). *See State v. Catanzarite*, 2005-Ohio-260, ¶ 13 (9th Dist.).

**{¶32}** Further, as previously noted, the trial court found, based on the testimony at the suppression hearing, that Dickey reported that Averesch was driving erratically with his vehicle "going in the middle of the road." (Tr. 9). *Weisner*, 87 Ohio St.3d 295, at 515 (Reasonable suspicion existed where an identified citizen informant reported another motorist was "weaving all over the road."). This report provided dispatch with information indicating that Averesch was struggling to control his vehicle and had committed a traffic violation.

**{¶33}** Given the indications of reliability that accompanied this tip from an identified citizen informant, we conclude that this information was sufficient to provide law enforcement with a reasonable and articulable suspicion of criminal activity under the facts of this case. *See also State v. Parson*, 2013-Ohio-2763, ¶ 13-14 (2d Dist.); *State v. Devanna*, 2004-Ohio-5096, ¶ 21 (3d Dist.); *Catanzarite*, 2005-Ohio-260, at ¶ 13 (9th Dist.). Thus, we conclude that Averesch's first argument is without merit.

**{¶34}** Second, Averesch argues that the tip did not provide sufficient information from which law enforcement could reliably identify his vehicle and did not, for this reason, have a reasonable articulable suspicion to conduct a traffic stop. In this case, Dickey indicated that she gave a description of Averesch's car and where he was traveling in relation to the Party Mart.

**{¶35}** Officer Lammers testified that dispatch then communicated to him that the suspect had left "the gas station in a red Dodge Challenger southbound [on] Taft Street." (Tr. 12). He also testified that the police station where was he located at the time he received the dispatch was close to the Party Mart. Because he was in close proximity to the gas station, he was able to locate the red Dodge Challenger while Averesch was still driving southbound on Taft Street.

**{¶36}** Officer Lammers testified that he then followed the red Dodge Challenger until Averesch began to park his vehicle at the side of street. A recording from the police cruiser's dashboard camera was submitted into evidence. In this recording, Averesch's car had a very distinctive color and was the only red Dodge Challenger on the street identified in the report from dispatch. Given these facts, we conclude that Dickey provided information from which an officer in the vicinity of the Party Mart could identify Averesch's vehicle. *See Parson*, 2013-Ohio-2763, at ¶ 13-14 (2d Dist.); *State v. Bunn*, 2012-Ohio-2151, ¶ 18-19 (12th Dist.). Thus, Averesch's second argument is without merit.

**{¶37}** Having examined the totality of the circumstances in this case, we conclude that the tip from the identified citizen informant had sufficient information to warrant an investigative traffic stop of Averesch's vehicle. Since this tip provided law enforcement with a reasonable articulable suspicion of criminal activity, the trial court did not err in concluding that the traffic stop was legally justified. Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

**{¶38}** Averesch argues that the trial court imposed an unconstitutionally excessive fine under the facts of this case by ordering him to forfeit his vehicle.

Legal Standard

**{¶39}** "R.C. 4511.19(G)(1)(c)(v) mandates forfeiture of an offender's vehicle . . . [when]: (1) the vehicle that was involved in the OVI offense was owned by the offender; and (2) the offender had previously been convicted of OVI violations twice within ten years of the offense." *Bowling Green v. Coble*, 2023-Ohio-1308, ¶ 10 (6th Dist.). "The General Assembly enacted R.C. 4511.19(G) to deter people from driving drunk and to punish those who continue to do so to better protect Ohioans and their property from the damage that may follow." *State v. O'Malley*, 2022-Ohio-3207, ¶ 27. The Supreme Court of Ohio has held that the in personam forfeitures made pursuant to this provision are fines because this measure is "used to punish an individual for committing a criminal offense." *O'Malley* at ¶ 37.

**{¶40}** The Eighth Amendment to the United States Constitution prohibits excessive fines. *State v. Brill*, 2023-Ohio-404, ¶ 36 (3d Dist.). In evaluating in personam forfeitures under this constitutional provision, courts are to "determine whether the forfeiture is 'grossly disproportional to the gravity of a defendant's offense.'" *O'Malley* at ¶ 39, quoting *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). "[T]here is no 'bright-line test' for analyzing an Eighth Amendment excessiveness

challenge . . . ." *Coble* at ¶ 14. However, this process generally involves "weigh[ing] the value of the thing seized against the gravity of the offense." *Id.* at ¶ 13.

## Standard of Review

**{¶41}** "A statute may be challenged on constitutional grounds in two ways: (1) that the statute is unconstitutional on its face, or (2) that it is unconstitutional as applied to the facts of the case." *State v. Brown*, 2010-Ohio-4546, ¶ 10 (3d Dist.).

> Where it is claimed that a statute is unconstitutional as applied, the challenger must present clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional and void when applied to those facts.

*State v. Pirani*, 2024-Ohio-3060, ¶ 34 (3d Dist.), quoting *Brown* at ¶ 10. In contrast, a facial "challenge is the most difficult to successfully mount because the challenger must establish that no set of circumstances exists under which the act would be valid." *State v. Mole*, 2016-Ohio-5124, ¶ 96.

## Legal Analysis

**{¶42}** On appeal, Averesch argues that the trial court's order to forfeit his vehicle was a fine that was grossly disproportionate to the gravity of his offense. On the basis of this argument, he asserts that the statute requiring forfeiture of his vehicle was unconstitutional as applied to the facts of this case.

**{¶43}** In evaluating this challenge, we turn to the Supreme Court of Ohio's recent decision in *State v. O'Malley*, 2022-Ohio-3207, ¶ 97. In that case, the trial

court ordered the defendant to forfeit his vehicle pursuant to R.C. 4511.19(G)(1)(c)(v). *Id.* at ¶ 19. On appeal, the defendant pointed out that his vehicle was worth $31,000.00; that his pickup truck was his only significant asset; and that the maximum fine for his offense was only $2,750.00. *Id.* at ¶ 97, 105.

{¶44} To determine whether this fine was excessive, the Supreme Court of Ohio considered: (1) the value of the vehicle subject to forfeiture; (2) the gravity of the offense; and (3) the balance between the value of the vehicle and the gravity of the offense. *O'Malley* at ¶ 52, 53, 102. As to the first consideration, the defendant's vehicle was purchased for roughly $40,000.00; had a present value of around $31,000.00; was his primary means of transportation; and was his "only significant asset." *Id.* at ¶ 52. *See Id.* at ¶ 105 (Donnelly, J., dissenting).

{¶45} As to the second consideration, the Supreme Court of Ohio gauged the gravity of the offense by examining the following factors (a) the sentencing scheme enacted by the legislature; (b) the culpability of the defendant; and (c) the harm to society. *O'Malley* at ¶ 86. In evaluating these factors, the Supreme Court of Ohio emphasized deference to the legislature's decision to create a graduated sentencing structure that increased the penalty based on the number of OVI convictions that the defendant had on his record in the past ten years. *Id.* at ¶ 55.

{¶46} Further, the defendant was also found to have a "higher level of culpability" because he already had two OVI convictions and chose to drive on a holiday weekend while "very intoxicated." *O'Malley* at ¶ 53, 79, 83. The concept

-18-

of "harm" in an Eighth Amendment analysis encompasses "the harm caused or threatened to society . . . ." *Id*. at ¶ 88. For this reason, the defendant in *O'Malley* was found to have harmed society by creating a risk to the safety of the other drivers on the roadway. *Id*. at ¶ 96.

{¶47} As to the third consideration, the Supreme Court of Ohio weighed the "legislature's choice of punishment" and the gravity of the offense against the value of the forfeited vehicle. *O'Malley* at ¶ 102. The forfeiture of the $31,000.00 vehicle was ultimately found not to be grossly disproportionate to the gravity of the offense. *Id*. For this reason, the Supreme Court of Ohio concluded that the defendant had failed to establish by clear and convincing evidence that the forfeiture was an excessive fine that rendered R.C. 4511.19(G)(1)(c)(v) unconstitutional as applied to the facts of his case. *Id*. at ¶ 103.

{¶48} We turn to applying the analytical framework established in *O'Malley* to the facts of the case presently before us. As to the first factor, Averesch submitted documentation establishing that the value of his vehicle at the time of its purchase in 2023 was $37,933.00[2] and testified that he paid for this vehicle with an inheritance of $100,000.00 that he had received. However, he did not provide any evidence regarding the value of the vehicle at the time of the forfeiture hearing. Since the vehicle in *O'Malley* was purchased for about $40,000.00 in 2014 and was

---

[2] The sales price of the vehicle was $37,933.00. This figure did not include the sales tax that totaled $2,615.53 or the document preparation fees that totaled $265.00. After he traded in his pickup truck for a credit of $7,000.00, he ultimately paid $33,833.53 for the vehicle.

worth around $31,000.00 at forfeiture, the vehicles in these two cases were roughly similar in value, considering the timeframes in which these vehicles were purchased and forfeited. *Id.*, 2022-Ohio-3207, at ¶ 52, 105.

{¶49} Further, Averesch testified that he had made $18.00 an hour until he was terminated after he was charged for OVI. He also stated that he had a monthly rental obligation of $600.00. While the defendant in *O'Malley* lived with family and did not have a monthly rental obligation, he was unemployed at the time of the forfeiture hearing, and his "only significant asset" was his vehicle. *Id.*, 2022-Ohio-3207, ¶ 52, 102. In contrast, Averesch stated that he had $33,000.00 set aside in a money market account.

{¶50} As to the second factor, Averesch chose to drive while intoxicated after he had received two prior convictions within the last ten years for the exact same conduct. Further, Dickey testified that, when she called dispatch, she was concerned about Averesch's condition because she observed that "there was a lot of people out" at the time of the offense, including children. (Tr. 10). In assessing the defendant's culpability in *O'Malley*, the Supreme Court of Ohio considered the fact that he chose to drive while intoxicated on a holiday weekend when the roadways would generally be busier. *Id.*, 2022-Ohio-3207, at ¶ 53, 83.

{¶51} As to the third consideration, Averesch asserts that the value of the vehicle is disproportionate to the gravity of his offense. However, we note that our analyses of the first two considerations yielded conclusions that were similar to the

analyses conducted for the first two considerations in *O'Malley*, 2022-Ohio-3207, ¶ 52-101. Given these similarities, we conclude that the third consideration in this case should be resolved in the same manner the Supreme Court of Ohio resolved it in *O'Malley*. *Id*. at ¶ 102. Thus, we conclude that Averesh has failed to demonstrate that the value of the forfeiture is grossly disproportionate to the gravity of the offense.

{¶52} In conclusion, Averesch has not demonstrated that the forfeiture of his vehicle was an excessive fine within the meaning of the Eighth Amendment. Thus, Averesch has failed to clearly and convincingly establish that the statute requiring forfeiture of his vehicle was unconstitutional as applied to the facts of this case. Accordingly, the third assignment of error is overruled.

*Conclusion*

{¶53} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Putnam County Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

                                  _____

                                  John R. Willamowski, Judge

                                  _____

                                  William R. Zimmerman, Judge

                                  _____

                                  Mark C. Miller, Judge

DATED:
/hls