[Cite as *State v. Johnston*, 2022-Ohio-2097.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-09-085 |
| | : | O P I N I O N |
| - vs - | | 6/21/2022 |
| | : | |
| PAUL D. JOHNSTON, JR., | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR37916

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Cohen, Todd, Kite & Stanford, LLC, and John L. O'Shea, Jesse E. Knowlden, and Cassandra S. Gleason, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Paul D. Johnston, appeals his conviction after a bench trial in the Warren County Court of Common Pleas for two counts of rape of a child under the age of 13 and seven counts of gross sexual imposition. For the reasons discussed below, we affirm Johnston's convictions.

{¶ 2}   Johnston was charged in a 12-count indictment with multiple charges of rape and gross sexual imposition.   The charges arose in 2019 after Johnston's two former stepsons disclosed that he had sexually abused them between 2011-2016.   During that time period, the two boys lived with their mother, two sisters, and Johnston, briefly in Hamilton, and then in Carlisle after their mother and Johnston married.   At the time they moved to Carlisle, the older stepson was 11 years old and the younger stepson had just turned 6 years old.   The two sisters went to public school, and Johnston homeschooled the two boys while their mother worked several jobs.

{¶ 3}   The older stepson, who was 21 years old at the time of trial, testified that when he was 11 years old, he was having constipation problems but was afraid to tell his mother or father because his older sister had ulcerative colitis which caused his parents a great deal of stress and he did not want to worry them.   He testified that instead, he asked Johnston, who had some amount of medical training from a previous job with the fire department, to help with the situation.

{¶ 4}   According to the older stepson, Johnston examined his anus and said that the child had a flap of skin that needed to be put back in place.   Johnston suggested the child take a plunger and place it up his anus to put the flap of skin back into place.  The stepson did so, and Johnston told him that he would check again in a few days to make sure everything was in place.   Johnston "checked" the problem a few days later with his finger, using petroleum jelly from a Vaseline jar.  A few weeks after the move to Carlisle, the child asked Johnston if they needed to check the problem again because he was still having issues.   Johnston told the child that they needed something bigger to fix it this time and suggested using his penis.   The older stepson said he was uncomfortable with this suggestion, but Johnston explained it as a medical procedure, and told the child that the other option was to tell the child's mother and go to the hospital to fix it.   The child was

concerned about having a major health issue and the stress going to the hospital would cause his mother, so he agreed to Johnston's suggestion. Johnston told the child to take off his clothes and bend over the bed. Johnston then inserted his penis into the child's anus and ejaculated on his back.

{¶ 5} According to the older stepson, this scenario continued for the next four or five years. Johnston would regularly ask to "check the problem" and would insert his penis into the child's anus to "fix it." The stepson testified that he was embarrassed but thought it was a medical issue. At one point around the age of 13, the child was concerned because the problem kept happening, and asked Johnston if they should tell a doctor and have it fixed permanently. Johnston replied that if they told anyone, they would both get in trouble and the child did not want that to happen, so they kept doing it.

{¶ 6} The older stepson described a particular incident that occurred in late 2014 in his mother and Johnston's bedroom. He explained that he had nightmares and trouble sleeping, so he would sleep on the floor of his mother and Johnston's bedroom. On one occasion, Johnston had the child get in the bed, they laid on their sides in a spooning position and Johnston "checked the problem" while mother was asleep in the bed. The older stepson said he was embarrassed and scared and did not want to explain to his mother what was happening. He indicated it was a "normal thing" that happened and while he was "not ok with it," in a sense he was content to let it happen.

{¶ 7} The older stepson testified that somewhere around the age of 15 and one-half years, his outlook on what was happening changed. Around this time, Johnston stated that he wanted to "check the problem" and the child said "no." Johnston persisted, stating "just real quick," and the child responded, "If I say 'no,' isn't that rape?" Johnston got mad and "stormed out of the room." The same scenario repeated for some time, with the child occasionally giving in. Eventually, when the child said he did not want to do it any more,

Johnston had a "look of rage," was angry, and began walking toward the child. The child hit Johnston a few times so that he could slide around him, leave the room and go downstairs. After this physical confrontation, the older stepson said Johnston was more irritable and things got on his nerves easily. In addition, Johnston yelled at his sisters more over "small stuff" and treated the children's mother differently. The older stepson testified that a few weeks later, his mother "kicked Johnston out" and the couple started the divorce process.

{¶ 8} The younger stepson, who was 16 years old at the time of trial, testified that he was five or six years old when the family moved to Carlisle. Around the age of seven, he was having issues with wiping too roughly after using the bathroom and his anal area was sore. He indicated that he told Johnston about the problem because his mother worked and was often not home.

{¶ 9} Johnston told the younger stepson he had an irritation and they needed to put cream on it. The child described the cream as coming from a semi-transparent rectangular container with a blue lid. The child testified that Johnston had him lay on the bed on his stomach and Johnston put a pillow or blanket on top of the child's head so he could not see. Johnston continued to ask the child to check the problem for about a three-year period, particularly after baths. The child testified he could feel Johnston spreading the cream and a few times something penetrated his anus. The younger stepson testified that during one incident he remembered telling Johnston that it hurt and biting down on a pillow. He described another incident he particularly remembered where Johnston told him to try pushing so that it would hurt less, but the child pushed too hard and defecated. The child testified that at the time, he did not have an understanding of what was happening, but trusted Johnston because he was the child's stepfather.

{¶ 10} The children's mother testified at trial that she was unaware of any medical

problems with her older son. She testified that her older son always wanted to be in close proximity to Johnston and she would sometimes wake up to find the child in their bed, pressed up against Johnston. She was concerned about the close physical contact and expressed this concern to Johnston several times. Later, the mother noticed an increased strain between Johnston and her older son, but she was not sure why the strain existed. She further indicated she was aware that her younger son had hygiene issues causing a skin irritation and that Johnston was applying cream to treat the problem.

{¶ 11} Johnston testified and denied the allegations. He stated that he did not remember his older stepson's constipation issues. He indicated the child was clingy and had an attachment to him and sometimes slept in his bed, although he tried to get the child to stop, but the child's mother did not seem to think it was a problem. Johnston testified that the younger stepson had hygiene issues and the child's mother put cream on it initially. He indicated he kept an eye on it and put medication on the child's anal area, but it was not sexual in any way, and he never placed anything inside the younger stepson's anus.

{¶ 12} The trial court found Johnston guilty of two counts of rape of a child under 13 and gross sexual imposition involving the older stepson. The court found Johnston guilty of six counts of gross sexual imposition involving the younger stepson. Three of these guilty findings were lesser included offenses of rape charges. Johnston was found not guilty of the remaining charges. The trial court's sentences were all run concurrently, for an aggregate sentence of ten years to life. Johnston was also classified as a Tier 3 sex offender.

{¶ 13} Johnston now appeals his conviction for rape and gross sexual imposition, raising the following two assignments of error for our review. Because they are related, we address the assignments of error together.

{¶ 14} Assignment of Error No. 1:

- 5 -

{¶ 15} JOHNSTON'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 16} Assignment of Error No. 2:

{¶ 17} JOHNSTON'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio 52 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10, (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

"While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26.

{¶ 20} An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 21} Johnston challenges his convictions on the basis that there was no physical evidence, no witnesses to the acts, and the only evidence offered by the state came from the testimony of the two victims, who he argued were not credible. He contends the older stepson was not credible as he only came forward after he was incarcerated for committing a sexual crime, his story did not make sense, and was implausible and flawed. As for the younger stepson, Johnston contended his testimony was not credible because he changed his story after seeing a counselor and his statement that his mother was unaware of his skin issues was contradicted by her testimony.

{¶ 22} The older stepson explained that he was ashamed and did not tell anyone about the sexual offenses until March 2019 when he was himself incarcerated for sexual offenses involving a minor. His father visited him in jail and asked his son if anything sexual had ever happened to him with Johnston. At that point, the older stepson revealed to his father that something had happened between him and Johnston. Shortly after, the older

stepson was interviewed by a police officer and an investigation began.

{¶ 23} The younger stepson testified that after his older brother revealed that something sexual happened with Johnston, his mother asked if Johnston "did anything to him." He testified that he only then realized what had happened during the encounters with Johnston and told his mother that something had happened. He was interviewed at the Child Advocacy Center and then began seeing a counselor and after talking about the situation with the counselor, remembered more details.

{¶ 24} In sex offense cases, Ohio courts have consistently held that physical evidence is not required to support a conviction for a sex offense, and the lack of physical evidence does not mean the offense did not occur as testified to by a victim. *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 31. Rather, a victim's testimony, if believed, is sufficient to prove sexual conduct, and does not need to be corroborated by physical evidence. *In re B.D.H.*, 12th Dist. Warren No. CA2020-01-001, 2020-Ohio-4879, 2020 Ohio App. LEXIS 3743, *9 (Oct. 13, 2020); see also *State v. Laseur*, 12th Dist. Warren Nos. CA2002-10-117 and CA2002-11-121, 2003-Ohio-3874, ¶ 14.

{¶ 25} As mentioned above, we are required to give substantial deference to the trier of fact, in this case the trial judge, in issues involving the credibility of witnesses. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St. 3d 77, 80. Therefore, an appellate court must not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court. *Id.* "If the evidence is susceptible to more than one interpretation, the appellate court must interpret it consistently with the

judgment of the trial court." *State v. Lorton,* 12th Dist. Butler Nos. CA2000-07-136 and CA2000-07-145, 2001 Ohio App. LEXIS 1260, at *9-10 (Mar. 19, 2001).

{¶ 26} Because the evidence on both sides was solely testimony, this case ultimately turned on the credibility of the victims and Johnston. While Johnston cross-examined the victims and provided a rationale for the court to disbelieve their testimony, the court was not required to discredit the victims' testimony on the bases now argued by Johnston. Instead, the court chose to believe the victims' testimony. We find nothing in the record from which to conclude that the trial judge patently lost his way in finding the victims' testimony credible.

{¶ 27} Johnston further argues that there was no evidence of sexual contact with the younger stepson because nothing showed the application of cream was for sexual arousal or gratification. Instead, he argues the testimony establishes there was a medical reason for the application of cream to the younger stepson.

{¶ 28} With regard to the younger stepson, Johnston was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which prohibits sexual contact with another who is less than 13 years old. Sexual contact is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "While an essential element of the offense of gross sexual imposition is that the act is for the 'purpose of sexual arousal or gratification,' there is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 69.

{¶ 29} In determining whether sexual contact occurred, it is proper to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact. *In re A.L.*, 12th Dist. Butler No. CA2005-12-520, 2006-Ohio-4329, ¶ 19-20. "Whether the touching was performed for the purpose

of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 33. In making this determination, the trier of fact is "permitted to infer what the defendant's motivation was in making the physical contact with the victim." *State v. Robinson*, 12th Dist. Clermont No. CA2015-01-013, 2015-Ohio-4533, ¶ 43. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 78.

{¶ 30} The fact that appellant provided a nonsexual reason for touching the younger stepson does not preclude the trial court from determining that there was also a sexual motivation for the touching. Instead, this was an issue of credibility for the trial court to determine and the record provides support for the trial court's determination. The younger victim testified that Johnston only applied the cream when they were alone and a pillow or blanket was placed over his head so he could not see, which is not required for medical treatment of a rash. In addition, the rash was treated over an extended period of time without seeking further medical attention. Moreover, the younger victim's description of the type and nature of the contact was in many ways similar to that of the older victim with whom there was clearly a sexual intent, including that Johnston used a medical problem as a reason to begin sexual contact. Both boys testified that they did not discuss the specifics of Johnston's sexual offenses with the other and they were unaware of what happened to the other. In addition, the victim's testimony regarding the "pushing incident" is inconsistent with medical treatment.

{¶ 31} Accordingly, given the evidence introduced at trial, we find Johnston's convictions for rape and gross sexual imposition were supported by sufficient evidence and

were not against the manifest weight of the evidence. Johnston's first and second assignments of error are therefore overruled.

**{¶ 32}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.