[Cite as *State v. Buckland*, 2023-Ohio-2095.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-09-062 |
| | : | O P I N I O N |
| - vs - | | 6/26/2023 |
| | : | |
| RICHARD E. BUCKLAND, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR37886

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Engel & Martin, LLC, and Joshua A. Engel, for appellant.

**HENDRICKSON, P.J.**

{¶ 1}  Appellant, Richard E. Buckland, appeals his conviction after a bench trial in the Warren County Court of Common Pleas for three counts of gross sexual imposition involving a child under the age of thirteen, in violation of R.C. 2907.05(A)(4).  For the reasons discussed below, we affirm appellant's convictions.

{¶ 2}  From 2010 to 2017, the victim, whom we will call "Hannah", lived with her

mother and two younger siblings at a house on State Route 42 in Wayne Township, Warren County.[1] When her family first moved to the house, Hannah was six or seven years old. Whenever her mother was working or not at home, appellant, an extended family member, would frequently babysit Hannah and her siblings. By the time Hannah was seven or eight years old, appellant began living with the family at their house. During the time Hannah was between the ages of six and eight years old, appellant regularly sexually abused her. At trial, Hannah testified to three distinct incidents.

{¶ 3} In one incident, when Hannah was in first grade, appellant waited until her siblings were not around and then "dragged" Hannah into the bathroom and locked the door. Appellant then pulled down his pants and her pants, sat on the toilet, bent her over in front of him, and rubbed his erect penis on her buttocks until he ejaculated. Appellant told Hannah that if she told anyone about what had happened, they would both get in trouble.

{¶ 4} In another incident, appellant locked Hannah in her mother's bedroom, bent Hannah over the bed, pulled each of their pants down, and rubbed his penis on her buttocks. Appellant again told Hannah that if she told anyone, they would both get in trouble.

{¶ 5} In the last incident Hannah recalled, she was taking a nap on the couch in the living room after school. Appellant then climbed onto the couch behind her, and while "spooning" her, reached his arm over, put his hand down her pants, and rubbed her bare vagina under her underwear. Once again, he told her not to tell anyone or they would both get in trouble.

{¶ 6} During the time Hannah lived with her mother, Hannah never told anyone about the sexual abuse, fearing she would get in trouble. Then, in February 2017, Hannah

---

1. The parties' briefs refer to the victim by her initials. For further privacy and for readability, we are using a fictionalized first name to refer to the victim.

moved in with her maternal grandparents due to her mother's drug problems. After the move, Hannah felt safer and told her grandmother about appellant's sexual abuse, but Hannah's grandmother did not report it to the police. Hannah also began seeing a counselor at her new school and told the counselor about appellant's sexual abuse, but the counselor, for some unknown reason, also did not report it to the police.

{¶ 7} Finally, in 2018 when Hannah was in eighth grade, she exchanged SnapChat messages with a stranger who was attempting to extort nude photos from her. Unbeknownst to Hannah, that person was under federal investigation by the Department of Homeland Security. Agents identified Hannah in one of the photos in the individual's possession, contacted her grandparents, and scheduled an interview for Hannah at the Child Advocacy Center in Wilmington, Ohio on June 5, 2020. During the interview, the topic of conversation turned to appellant, and Hannah told the forensic interviewer how appellant had sexually abused her.

{¶ 8} Appellant was subsequently charged with five counts of gross sexual imposition and one count of rape. He waived his right to a jury trial and the case proceeded to a bench trial on August 17, 2022. Prior to trial, the state nolled two of the gross sexual imposition charges and the rape charge. Hannah testified at trial about the three specific incidents of sexual abuse, and appellant testified in his own defense. The defense argued that other men visited Hannah's home during that time who could have been the perpetrator and also that Hannah was accusing appellant because she was angry at him for being involved in the criminal drug charges that led to her mother's imprisonment.

{¶ 9} The trial court found appellant guilty on all three counts of gross sexual imposition and sentenced him to 48 months in prison on each count, to be served concurrently. The court also designated him a Tier II sex offender. Appellant now appeals his convictions and raises one assignment of error for our review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE CONVICTION IN THIS MATTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Appellant asserts that his conviction was against the manifest weight of the evidence basically for two reasons: (1) Hannah could not place the alleged events more specifically than within a three-year time frame and (2) she did not reveal the alleged sexual abuse until years later, after being questioned by federal agents, when she may have believed she was in trouble. Appellant also claims he was prejudiced by the lack of precise dates for the alleged incidents and by the breadth of the three-year time frame provided in the bill of particulars, which prevented him from being able to develop evidence that may have implicated someone else as the perpetrator.

{¶ 13} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in

extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

<u>*Failure to Provide Specific Dates of the Offenses*</u>

{¶ 14} Appellant first argues that his convictions were against the manifest weight of the evidence because of the victim's failure to provide specific dates for each of the charges. In *State v. Blankenburg*, 197 Ohio App. 3d 201, 2012-Ohio-1289 (12th Dist.), we stated that "A precise time and date of an alleged offense are not ordinarily essential elements." *Id.* at ¶ 43, citing *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). Appellant concedes that we have previously held that in sexual abuse cases involving children, it may be impossible to provide a specific date in the indictment. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 36. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. *State v. Scott*, 12th Dist. Clermont Nos. CA2019-07-051 and CA2019-07-052, 2020-Ohio-3230, ¶ 40. "'Under circumstances dealing with the memory of a child, reasonable allowances for inexact dates and times must be made.'" *Id.*, quoting *State v. Collinsworth*, 12th Dist. Brown No. CA2003-10-012, 2004-Ohio-5902, ¶ 23.

{¶ 15} Fundamentally, appellant argues that Hannah's lack of specificity as to the dates and times these incidents occurred was beyond reasonable allowance. In support of this argument, appellant claims that his case is similar to *State v. Warren*, 168 Ohio App.3d 288, 2008-Ohio-2011 (8th Dist.). In *Warren*, the defendant was charged in a 48-count indictment concerning the sexual abuse of a child that occurred over the span of three months, approximately 26 years earlier. *Id.* at ¶ 2. Testifying as an adult, the victim estimated that the defendant inserted his penis into her vagina "eight or nine times" and that he inserted his finger into her vagina "a good 11 or 12 times." *Id.* at ¶ 20. The court

found that a rational trier of fact could reasonably find that appellant penetrated the victim both digitally and with his penis, but ruled that a "numerical estimate which is unconnected to individual, distinguishable incidents," was not sufficient to support additional charges of rape and gross sexual imposition. *Id.* at ¶ 19-20. Thus, the court affirmed the convictions for four of the counts of gross sexual imposition, one count of rape, and five counts of kidnapping, but reversed the other convictions. *Id.* This is because the victim failed to identify each of the other convictions as separate incidents.

{¶ 16} The present case is readily distinguishable. Hannah testified that she was repeatedly subjected to sexual abuse, but she detailed three distinct incidents of sexual abuse, in three distinct areas of her home—accordingly, appellant was convicted on three counts of gross sexual imposition. This is not a case involving wide numerical estimates, and it bears repeating that in *Warren*, where the court found the victim's testimony recounted distinguishable incidents according to the manner of sexual abuse, the court affirmed those convictions. Hannah's testimony was reasonably specific as to the three incidents she suffered, detailing the manner and circumstances of each.

### *Prejudice Due to Inexact Dates*

{¶ 17} Interwoven with his sole assignment of error, appellant claims that the inexactitude of the dates provided in the bill of particulars (January 1, 2011 through December 31, 2013) prejudiced his ability to defend himself.[2] This court has recognized that there are some exceptions where dates and times are essential and the failure to provide specific dates and times may prejudice the accused, such as instances where the

---

2. Although appellant presents this issue under a manifest weight of the evidence argument, it seems more like a due process claim. However, since appellant does not allege a due process claim, we shall address this issue as he presented it, i.e., as a manifest weight of the evidence claim. *See* App R. 12 ("The court may disregard an assignment of error presented for review if the party raising it. . . fails to argue the assignment separately in the brief, as required under App. R. 16[A]").

accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified. *State v. Wagers*, 12th Dist. Preble No. CA2009-06-018, 2010-Ohio-2311, ¶ 19. However, "[a] defendant is not prejudiced by the failure of the indictment to specify the dates and times upon which the charged offenses allegedly occurred if such failure does not impose a material detriment to the preparation of his defense." *State v. Mundy*, 99 Ohio App.3d 275, 297 (2d Dist. 1994), quoting *State v. Barnecut,* 44 Ohio App. 3d 149, (5th Dist.1988), paragraph one of the syllabus. In cases "[w]here the defendant does not present an alibi defense, where he concedes being alone with the victims of the alleged sex offenses at various times throughout the relevant time frame, and where his defense is that the alleged touchings never happened, the inexactitude of dates or times in the indictment is not prejudicial error." *Id.*

{¶ 18} Appellant did not file a notice of an alibi defense. Instead, appellant conceded to living in the home from 2011 to 2013, conceded to having access to as well as care of Hannah during the three-year timeframe when no other adults were present, and presented a defense which invoked issues of credibility unrelated to the lack of any exact date or time in the indictment or bill of particulars. Specifically, appellant argued that Hannah had fabricated her story that he had abused her because Hannah was mad at him for being involved in a drug-related incident where her mother went to prison while he did not. There is no merit to this argument because Hannah's mother was not even charged until December 2018, well after Hannah had already disclosed the abuse to her grandmother and counselor. Simultaneously, appellant offered vague speculation that some non-specific visitor at the home could have abused Hannah and that she was simply confused. Accordingly, appellant has failed to demonstrate that he suffered material detriment by virtue of any inexactitude in the bill of particulars. *See State v. Cornwell*, 11th Dist. Trumbull No. 95-T-5379, 1998 Ohio App. LEXIS 806 (Feb. 27, 1998).

*Victim's Lack of Credibility*

{¶ 19} Finally, in addition to the arguments set forth above, appellant claims that Hannah herself was not a credible witness because she did not disclose the abuse to law enforcement until years later, and because she comes from an unstable home. Appellant argues Hannah only disclosed the abuse to the authorities when she was questioned by federal agents and suggests she may have fabricated the story just to stay out of trouble. However, Hannah testified that she had already disclosed the abuse to her grandmother shortly after moving in 2017 or 2018, and again to her school counselor in May 2018, which the counselor documented but never reported to authorities. Appellant further argues that instability in Hannah's childhood home, with her mother's multiple boyfriends and history of drug abuse, could have caused Hannah to confuse her memories. However, Hannah testified that the three incidents were representative of the usual way that appellant repeatedly abused her, and none of her mother's boyfriends looked the same as appellant or were even the same age.

{¶ 20} As mentioned above, we are required to give substantial deference to the trier of fact, in this case the trial judge, in issues involving the credibility of witnesses. "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Johnston*, 12th Dist. Warren No. 2021-09-085, 2022-Ohio-2097, ¶ 25, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St. 3d 77 (1984). Therefore, an appellate court must not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the decision rendered by the trial court. *Johnston* at ¶ 25. Accordingly, we find the trial court did not lose its way in finding Hannah's testimony credible.

{¶ 21} For the foregoing reasons, we find appellant's convictions were not against the manifest weight of the evidence.

{¶ 22} Appellant's sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

PIPER and BYRNE, J., concur.